UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M Company, <br> a Delaware Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> Infor Global Solutions (Michigan), Inc., <br> a Michigan Corporation, <br><br> Defendant. | Civil No. _____ |

## COMPLAINT

Plaintiff 3M Company ("3M"), for its Complaint against Defendant Infor Global Solutions (Michigan), Inc. ("Infor"), states with personal knowledge as to its own actions, and otherwise upon information and belief, as follows:

## INTRODUCTION

1. 3M asks the Court to declare its rights under a Software Licensing Agreement (the "Agreement") with Infor. As described more fully below, declaratory relief is proper because the parties and their interests are adverse, there is a real issue for determination, and the relief sought would finally settle and determine the matter in controversy.

## PARTIES

2. 3M is a Delaware corporation with its principal place of business in Minnesota. With operations in more than 65 countries, 3M is a recognized leader in

1

research and development and produces thousands of products for dozens of diverse markets.

3. Infor is a Michigan corporation with its principal office located in Georgia. On its website, Infor claims to be "the third largest provider of enterprise applications and services, helping 70,000 customers in 164 countries improve operations, drive growth and quickly adapt to changes in business demands."

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs and the controversy is between citizens of different states.

5. Infor is subject to personal jurisdiction in Minnesota because it has discussed, negotiated, and sold software packages, as well as service for those software packages, to businesses located in Minnesota. In its transactions with 3M, Infor knowingly placed its products into the stream of commerce and knew that it was working with a Minnesota-based company.

6. Venue is proper in the District of Minnesota under 28 U.S.C. § 1391 because Infor is subject to personal jurisdiction in this District and because a substantial part of the events giving rise to 3M's claims occurred in this District.

## NATURE OF THIS ACTION

7. This action arises out of 3M's use of Infor's BPCS and Infinium software ("Software")—software that is indispensable to 3M's domestic and international operations—provided by Infor under the parties' Agreement.

8. In July 2011, Infor claimed for the first time that a contract 3M had made with Cognizant Technology Solutions U.S. Corp. ("Cognizant") to have Cognizant employees provide certain support and maintenance for the Software was a violation of a confidentiality provision in the Agreement between Infor and 3M. Since July 2011, Infor has made numerous demands for varying amounts—ranging from $5,873,446 to $20,923,526—each of which purportedly represents the fees that Infor claims 3M owes as a result of its contract with Cognizant.

9. Although 3M does not believe that its contract with Cognizant violated the Agreement in any way, 3M terminated its contract with Cognizant as it pertains to the Software to avoid threatening 3M's relationship with Infor.

10. Nevertheless, Infor continued to demand money for alleged "back usage" of the Software by Cognizant. Infor is acting in bad faith and has no legitimate basis to demand any amount from 3M.

11. 3M seeks a declaration that (1) 3M has not breached the Agreement with Infor; (2) Infor, due to its prior conduct, is estopped from claiming breach; and (3) in any event, Infor has suffered no damages resulting from the alleged breach and is not entitled to any recovery.

## FACTUAL ALLEGATIONS

**3M Contracts With System Software Associates, Inc.**

12. On July 31, 1997, 3M entered into the Agreement at issue with System Software Associates, Inc. ("SSA") to obtain a license to the Software, as well as on-going support for the Software. Paragraph 4 of that Agreement provides 3M with a "perpetual,

personal, nontransferable and non-exclusive right and license to use the software . . . ." A true and correct copy of the Agreement is attached as Exhibit A.

13. In Paragraph 5, the Agreement states that Infor will provide certain on-going support to 3M, including updates and upgrades to the Software and access to technical support. Currently, 3M is paying Infor over $1 million dollars annually for this on-going support.

14. Although the Agreement provides for on-going support, Paragraph 6 of the Agreement states that there are certain services necessary to the ongoing maintenance and operation of the Software that Infor will not provide. Under the Agreement, 3M may procure those services from other, third-party vendors.

15. Paragraph 7 of the Agreement is entitled "Proprietary Data; Confidentiality." That provision states that 3M "agrees not to disclose the software (without SSA's prior written consent) to any service bureau or other agent or third party whose *primary function* shall be to provide [3M] with *day-to-day management* and support responsibility of the Software." (emphasis added). The terms "primary function," "day-to-day," and "management" are not defined in the Agreement.

16. In May 2006, Infor acquired SSA. Since that time, 3M and Infor have been operating under the terms of the Agreement.

17. 3M's license to use the Software is on per-seat basis. 3M's most recent purchase of the Software occurred on December 18, 2009, when 3M purchased 1,000 seats for $1.5 million (or $1,500 per seat). 3M currently owns the rights to approximately 8,000 seats, but is only using approximately 7,000 of those seats.

18. Over time, 3M has highly customized the Software to fit 3M's specific needs. Currently, only about 50% of the Software code used at 3M is original to Infor. Because of 3M's highly customized version of the Software, Infor employees—who are familiar with later, non-customized versions of the Software—are unable to assist 3M with much of the necessary support for the Software.

**3M's Relationship With Cognizant.**

19. Cognizant is a multinational provider of information technology services.

20. On November 1, 2009, 3M entered into a Master Professional Services Agreement ("MPSA") with Cognizant. Under the MPSA, 3M and Cognizant agreed that they would enter into "Statements of Work" for the provision of services related to 3M's licensed software.

21. The MPSA includes detailed provisions pertaining to the protection of "Confidential Information," a term that includes 3M's licensed software. Under the MPSA, Cognizant is required to "hold Confidential Information received from [3M] in confidence and shall use such Information only for the purposes of fulfilling its obligations or exercising its rights under" the MPSA. The MPSA further provides that Cognizant "shall not disclose, provide, disseminate or otherwise make available Confidential Information . . . to any third party without the express written permission of the disclosing party." Finally, Cognizant is prohibited under the MPSA from making "any use or copies of the Confidential Information," or otherwise selling, assigning, disclosing or commercially exploiting the Confidential Information.

22. On April 19, 2010, 3M and Cognizant entered into a Statement of Work pertaining to the Software. Under that Statement of Work, Cognizant agreed to perform maintenance and support for the Software under 3M's direction, and to assist 3M, at 3M's direction, with enhancements and customizations of the Software. Cognizant began working under this Statement of Work on June 11, 2010.

**Infor's Awareness And Approval Of The 3M–Cognizant Relationship.**

23. Infor has long been aware of 3M's relationship with Cognizant and has expressly approved of Cognizant as a third-party provider for 3M, thereby lulling 3M into a false sense of security with respect to its relationship with Cognizant.

24. In late 2009, 3M Information Technology Program Manager Janis Briesmeister discussed 3M's third-party provider strategy with 3M's main contact at Infor, Brett Ladd. Breismeister informed Ladd that 3M was planning to contract with third-party providers to work on maintenance and support of the Software. Although 3M had not decided who the third-party provider would be, Briesmeister told Ladd that it would either be IBM or Cognizant, and that she hoped it would be Cognizant. At that time, Ladd assured Briesmeister that this was a "common strategy" and "would not be an issue with Infor." He voiced no objection to 3M hiring third-party providers to work on the Software or to Cognizant acting as a third-party provider.

25. On February 26, 2010, 3M Software Specialist Scott Johnson wrote to Ladd to "request a modification to the Infor license agreement allowing 3M contracted third parties to access the BPCS" because "3M is considering utilizing a 3rd party managed service approach to support certain internal systems at 3M going forward."

26. That same day, Ladd responded to Johnson's email, stating that "we will need to incorporate new paper that provides for this. . . . If you can send me the information Scott I will get the process rolling." Infor expressed no concern and did not otherwise indicate that third-party access would be an issue.

27. On May 4, 2010, Johnson emailed Ladd to notify him that Cognizant was the vendor that 3M had selected. Again, Infor voiced no objection.

28. 3M reasonably relied on Infor's continuing and express assurances and failure to object to Cognizant as a third-party provider in authorizing Cognizant to start work on the maintenance and support of the Software on June 11, 2010.

29. On June 15, 2010, Ladd forwarded Johnson a proposed "Software Use and Confidentiality Agreement" (the "Cognizant/Infor Agreement") for Cognizant to sign. Johnson forwarded the Cognizant/Infor Agreement to Cognizant for its review. Cognizant retained the Cognizant/Infor Agreement for many months without comment. Ultimately, the Cognizant/Infor Agreement was never signed, due to Cognizant's belief that Infor had not properly defined Cognizant's duties with respect to the Software.

30. On March 21, 2011, Ladd informed Johnson that the Cognizant/Infor Agreement was "considered stale," but offered to visit with 3M "if there was still a real need." Again, Infor said nothing to indicate any objection or concern with Cognizant gaining access to the Software.

31. There is no evidence (and Infor has not claimed) that, in Cognizant's role as a third-party provider, Cognizant has misused or otherwise compromised the confidentiality of the Software.

**Infor Audits 3M, Claims Breach, And Demands Payment.**

32. On January 7, 2010, Infor contacted 3M for the purpose of scheduling a software audit "to confirm compliance with [3M's] Infor license."

33. As part of that audit, Infor asked 3M if it had "outsourced the day-to-day operation and/or maintenance of the Infor software."

34. On January 13, 2011, 3M responded "yes" and identified Cognizant as the service provider. The audit did not ask whether 3M outsourced management of the Software. In fact, 3M never has outsourced management of the Software.

35. On July 14, 2011, an Infor auditor named Andy Nelson sent 3M a letter notifying 3M that it was not in compliance with the parties' Agreement. In that letter, Nelson accused 3M of breaching its confidentiality obligations under Section 7 of the Agreement because 3M had "outsourced the day-to-day-operation of the Infor software by which Cognizant accesses the Software . . . ." Still, however, Infor voiced no objection to Cognizant gaining access to the Software. In fact, it stated that "Infor does and would grant access rights to non-Infor certified 3rd party providers under specific contractual terms and conditions." To obtain such access rights for Cognizant, Infor demanded $20,923,596.

36. Later, in a communication with 3M on September 27, 2011, Infor changed this figure, and claimed that 3M owed Infor between $17 million and $18 million to obtain access rights for Cognizant.

37. Upon information and belief, this is not the first time that Infor has made unreasonable demands for money from its licensees. Recently, Infor has attempted to

8

extract from other licensees exorbitant and unjustifiable fees based on frivolous breach-of-contract claims. Infor is acting in bad faith.

**3M Complies With Infor's Demands Out Of An Abundance Of Caution.**

38. At no point has 3M been in violation of the Agreement. However, out of an abundance of caution and in an effort to continue what has historically been an amicable and mutually beneficial relationship, 3M acted to address what it understood to be Infor's concerns.

39. On November 7, 2011, 3M Intellectual Property Counsel Richmond Rolfs spoke with Infor Senior Contract Officer Tom Moran. This conversation was memorialized by Rolfs in a letter sent that same day. In that letter, Rolfs confirmed that although 3M did not believe that its contract with Cognizant violated the terms of the Agreement, 3M agreed to end its contract with Cognizant as it pertains to the Software in an effort to maintain its relationship with Infor.

40. As documented in the November 7, 2011 letter, it was 3M's understanding, based on previous representations by Infor, that 3M's termination of its MPSA with Cognizant with respect to the Software would resolve the matter between 3M and Infor.

**Infor Makes Yet Another Unexplained Demand.**

41. Notwithstanding Infor's previous representation, in a November 10, 2011 letter from Brad Steiner, Infor's Vice President and Deputy General Counsel, Infor made yet another demand that 3M pay fees based on another unexplained "analysis" for "back usage" by Cognizant.

42. In this latest demand, Infor demanded fees of $7,831,262. Infor stated that it was willing to discount the amount "owed by 3M" to $5,873,446, but that if it was unable "resolve this matter amicably . . . [Infor] will have no choice by to pursue all appropriate legal remedies in connection with 3M's breach of the license agreement."

## COUNT ONE

### (Declaratory Judgment)

43. 3M incorporates and re-alleges paragraphs 1–42 as though fully set forth here.

44. An actual, existing, and bona fide controversy exists between 3M and Infor about the existence and extent of their contractual rights and obligations with respect to each other. 3M seeks, under 28 U.S.C. §§ 2201, 2202, a declaration of its rights under the Agreement.

45. Specifically, 3M seeks a declaration that Cognizant did not perform the "primary function" of "day-to-day management and support responsibility of the Software," and therefore that 3M did not breach its confidentiality obligations under Paragraph 7 of the Agreement.

46. 3M further seeks a declaration that even if Cognizant performed these activities, Infor, through its conduct, and 3M's good faith, reasonable reliance on that conduct, is estopped from claiming that 3M has breached the Agreement.

47. Finally, 3M seeks a declaration that, even if 3M had breached the Agreement and even if Infor is not estopped from asserting breach, Infor is not entitled to any damages resulting from the alleged breach.

## PRAYER FOR RELIEF

3M respectfully requests the following relief:

(1) A finding that 3M did not breach the Agreement.

(2) A finding that Infor is otherwise estopped from claiming breach because 3M reasonably relied on Infor's representations with respect to Cognizant, and 3M's reliance was in good faith.

(3) A finding that, in any event, Infor is not entitled to any damages arising out of the 3M's alleged breach of the Agreement.

(4) All costs, disbursements, and attorneys' fees recoverable under the law.

(5) All further relief that the Court finds just and equitable.

## JURY DEMAND

3M demands a trial by jury on all issues in the Complaint properly tried by a jury.

Date: November 23, 2011.

**FAEGRE & BENSON LLP**

By: /s/ Wendy J. Wildung
Wendy J. Wildung #117055
Joseph A. Herriges # 390350
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Telephone: 612.766.7000
wwildung@faegre.com
jherriges@faegre.com

**Attorneys for Plaintiff 3M Company**

fb.us.7493348.03

11